UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CURTIS E. CRAWFORD,** *            *Petitioner,* * * * **v.** * * * **STEVEN SMITH,** * *Respondent.* * * * | Civil No. 05-1068 (RWR) |

**UNITED STATES PAROLE COMMISSION'S RESPONSE TO
PETITIONER'S WRIT FOR WRIT OF HABEAS CORPUS**

The United States Parole Commission ("the Commission"), by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Opposition to petitioner's pro se Petition for Writ of Habeas Corpus. As explained below, petitioner has failed to exhaust his administrative remedies and therefore, his petition should be summarily dismissed. Alternatively, if the Court deems it necessary to examine the substance of the petition, it is clear that petitioner's claims are meritless and that his petition should be summarily denied.

**PROCEDURAL HISTORY**

On May 12, 1972, in the United States District Court for the District of Columbia, petitioner was sentenced to a term of incarceration of 3 to 20 years for the crime of Second Degree Murder. See Exhibit A. On or about December 22, 1980, petitioner was sentenced to 12 to 36 months' incarceration for two counts of Assault and one count of Destruction of Property. See Exhibit B.

Petitioner has a lengthy parole history, a portion of which is summarized in Crawford v. Jackson, 323 F.3d 123 (D.C. Cir.), cert. denied, 540 U.S. 856 (2003). More recently, and as is

relevant here, petitioner was mandatorily released on June 4, 2004.  Before he was released, he was given a document entitled "Certificate of Mandatory Parole or Mandatory Release."  Petitioner signed this certificate, which is dated May 19, 2004.

The certificate stated in part:

> Upon release, [petitioner] is to remain under the jurisdiction of the United States Parole Commission, as if on parole, under the conditions set forth on the reverse side of this certificate. . . .

See Exhibit C-1.  The certificate also stated that petitioner was to remain under supervision until his "full term date" (i.e., the date on which he would be completely released from custody and any type of supervision) of May 3, 2006.[1]

On March 8, 2005, petitioner's Community Supervision Officer ("CSO") requested that the Commission issue a warrant for petitioner's arrest based on his failure to report as directed; his positive drug tests; his failure to comply with the conditions of his supervision; and his failure to comply with graduated sanctions based on his positive drug test results.  See Exhibit D.

The Commission issued a warrant on March 10, 2005, charging petitioner with using dangerous and habit forming drugs; failing to comply with graduated sanctions by refusing placement in a monitoring program on three separate dates; and failing to report to his CSO for a conference.  See Exhibits E-1 to E-3.

Petitioner was arrested on this warrant on March 25, 2005, and he received a probable cause hearing on March 29, 2005.  See Exhibit F.  Petitioner, who was represented at the hearing by an attorney, declined to comment on any of the charges.

---

[1] In fact, as explained infra, because petitioner committed his crime before April 11, 1987, he was entitled to be released from supervision 180 days before his full-term date, or on November 4, 2005.

2

Petitioner's revocation hearing was held on June 1, 2005.  See Exhibit G.  At the hearing, petitioner's attorney raised an objection, contending that petitioner was not aware that he was on supervision following his release from custody on June 4, 2004.  Exhibit G, at 1.  The hearing examiner noted that the mandatory release certificate showed that petitioner was subject to supervision following his release in June 2004 and that petitioner signed this document, acknowledging his acceptance of the conditions of his supervision.  Based on this fact, the examiner overruled the objection.

Petitioner denied each of the charges.  In addition, as to the charges that he had used drugs and had failed to report to his CSO, petitioner claimed that he believed that he was not under supervision.  The hearing examiner made findings on all of the charges based upon the documents in the file and recommended that petitioner's mandatory release be revoked and that he be continued to the expiration of his sentence.  Following the hearing, the Commission issued its decision revoking petitioner's parole based on all of the charges.  The Commission ordered that petitioner be continued to the expiration of his sentence, and the Commission forfeited all of the time petitioner had spent in the community on mandatory release.  See Exhibit H.

Petitioner has administratively appealed the Commission's decision, and the appeal is still pending.[2]

---

[2] In addition, petitioner recently has filed two habeas petitions in D.C. Superior Court.  In case number SP-806-05, petitioner raised certain challenges regarding his release date and his revocation hearing.  The Honorable Henry F. Greene summarily denied this petition in an Order dated July 15, 2005.  In case number SP-1379-05, petitioner challenged the revocation of his parole in 1999.  On June 27, 2005, the Commission filed its opposition to this pleading.  No ruling has yet been issued.

## ARGUMENT

Petitioner's petition should be dismissed because he has not exhausted his administrative remedies. It is well established that a person seeking judicial review of agency action must first have exhausted available administrative appeals within the agency. See e.g., McKart v. United States, 395 U.S. 185, 193-95 (1969) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted") (citation omitted); Merki v. Sullivan, 853 F.2d 599, 600-01 (8th Cir. 1988) (failure to raise claim with Parole Commission's National Appeals Board "procedurally barred" claim before District Court); Norris v. Freeman, 497 A.2d 1108, 1110 (D.C. 1985) ("Ordinarily, all available administrative remedies should be exhausted before resort is had to habeas corpus"). Accordingly, because petitioner still has administrative remedies available to him, his petition should be summarily dismissed for failure to exhaust those remedies. Norris, 497 A.2d at 1109.

Even if the Court addresses the merits of his petition, petitioner's claims must nonetheless fail. Petitioner appears to make two basic claims in his petition: (1) his supervision ended on November 5, 2004, thereby making his arrest on March 5, 2005 illegal; and (2) because he was mandatorily released and not paroled, the Commission does not have authority to forfeit the time he spent in the community (i.e., his "street time"). These claims are without merit and should be summarily denied.

Upon his mandatory release on June 4, 2004, petitioner was to be subject to supervision for the full term date of his sentence, less 180 days. As the Commission's regulations make clear, petitioner is entitled to the subtraction of 180 days from his full term date because he committed his crime before April 11, 1987:

> Any prisoner having served his or her term or terms less deduction for good time shall, upon release, be deemed to be released on parole until the expiration of the maximum term or terms for which he or she was sentenced, <u>except that if the offense of conviction was committed before April 11, 1987, such expiration date shall be less one hundred eighty (180) days</u>. Every provision of these rules relating to an individual on parole shall be deemed to include individuals on mandatory release.

28 C.F.R. § 2.87(b) (emphasis added).

Therefore, petitioner's full term date (May 3, 2006) less 180 days was November 4, 2005. Petitioner nonetheless claims that, as of November 4, 2004, he was no longer under any supervision and that his arrest on March 5, 2005 therefore was "illegal." This claim fails for at least three reasons. First, petitioner provides no proof whatsoever to support his self-serving assertion that after November 4, 2004, he was no longer under any type of supervision. Indeed, petitioner's mandatory release certificate informed him that he was to be under supervision until May 3, 2006. Exhibit C-1. Although, as noted <u>supra</u>, this date was in error, this error certainly does not advance petitioner's claim that he was no longer under supervision as of November 4, 2004. Rather, as set forth above, petitioner was required to remain under supervision until November 4, 2005, 180 days before his full term date. Moreover, petitioner's signature appears on the mandatory release certificate, thereby acknowledging his review of it. Second, petitioner's own actions demonstrate that he was well aware that he remained under supervision after November 4, 2004. Indeed, in 2005, petitioner continued to report - albeit erratically - to his CSO, and he continued to submit to drug testing - although many of his tests were positive. <u>See</u> Exhibit D. Third, petitioner claimed at his revocation hearing that he did not believe that he was on supervision after his mandatory release on June 4, 2004 - a claim that differs significantly from his current claim that he was not on supervision after November 4, 2004. The fact that he

makes differing claims before different tribunals necessarily undermines his credibility. In sum, petitioner has failed to show that his supervision ended on November 4, 2004 or that his arrest on March 5, 2005 was "illegal."

Petitioner's second claim - that he, as a mandatory releasee, is not bound by the general provisions regarding street time forfeiture for all D.C. releasees - also fails. When a D.C. prisoner who has been released from custody is returned to custody on a release violation, the prisoner receives no credit for the time he spent in the community. See e.g. U.S. Parole Comm'n v. Noble, 693 A.2d 1084 (D.C. 1997), aff'd 711 A.2d 85 (D.C. 1998). Pursuant to D.C. Code § 24-406(a), upon revocation of release, D.C. parolees do not receive credit for time spent in the community under supervision. 28 C.F.R. § 2.105(d). Under the Commission's regulations for D.C. offenders, a mandatory releasee is to be treated exactly the same as a parolee for all supervision and revocation issues. See 28 C.F.R. § 2.87(b) ("Every provision of these rules relating to an individual on parole shall be deemed to include individuals on mandatory release."). Accordingly, as a mandatory releasee, whose supervision is governed by the same statute and regulations as a "regular" parolee, petitioner does not receive credit for the time he spent in the community prior to his revocation. Thus, petitioner's claim that his street time was unlawfully forfeited has no merit.

**CONCLUSION**

Petitioner's petition should be summarily dismissed because he has failed to exhaust his administrative remedies. Alternatively, petitioner's petition should be summarily denied because his claims have no merit.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar Number 451-058

ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Section
D.C. Bar Number 457-078

___/s/_____
MARGARET J. CHRISS
Assistant United States Attorney
D.C. Bar Number 452-403
555 4th Street, N.W.
Special Proceedings Section (10th Floor)
Washington, D.C.  20530
(202) 307-0874

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, this 25th day of July, 2005, I caused a copy of the foregoing Opposition to petitioner's Petition for Writ of Habeas Corpus to be mailed to:

Curtis Crawford
DCDC # 169-884
1901 D Street, S.E.
Washington, D.C. 20003

___/s/_____
Assistant United States Attorney